[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action instituted by the wife, Kathy Petonito, against her husband, Paul Petonito, seeking a dissolution of their marriage. One of the parties has resided in the State of Connecticut for more than one year prior to the bringing of this action and the court has jurisdiction over the marriage and the parties. Neither party has been a recipient of public assistance during the period of the marriage. The parties met in Minnesota in June 1995 and they were married in Minnesota on March 23, 1996. The wife relocated I to Connecticut to live with her husband in June of 1996 and she returned to Minnesota in August 1997 when they separated. The parties have no children. Both parties were previously married and the wife has three children from her prior marriage: David (who 21 years old and is mentally disabled), James (who is 18 years old), and Elizabeth who is 12 years old). The parties' marriage has broken down irretrievably. There is no reasonable hope of reconciliation, and the court orders a dissolution of the marriage. The court has reviewed the evidence, the financial affidavits, proposed orders and post-trial memoranda submitted by the parties. The court makes the following findings and orders.
The wife is 41 years old. She has a Bachelor of Marketing Degree, and a Bachelor of Business Degree. She is generally in good health. When the parties met, she was working as a sales person at Helzberg Diamonds. Since the divorce, she has returned to the employ of Helzberg Diamonds and now works as a manager. According to her financial affidavit, she earns $640 gross and $429 net per week from this employment, however, the evidence CT Page 2366 indicates that her present gross income actually ranges between $700 and $800 per week. Her weekly expenses are approximately $500 per week. She lists banking accounts having a total value of $19,250, a deferred compensation plan having a $650 value, and a 1994 automobile having a $1,305 equity value. She has liabilities, including education and credit card debts, totaling about $72,000.
When she married the defendant, the wife disposed of much of her furniture and personal belongings, anticipating that she would not need them at her new home in Connecticut. She also sold two properties she owned, one for a loss of approximately $3,000 and one for a profit of approximately 20,000. After she relocated to Connecticut, she worked for a short time period as a clerk at Subway until the parties started their own business, Advance Hair and Transplant Center, in December 1996. Most of the money needed to start up this business (approximately $1,000) was provided by the wife, primarily through charges on her credit cards. She also paid for the training she received in Arkansas in order to learn about the business and the machinery necessary for the business. The business was located in a doctor's office and actually opened for customers in March 1997. The wife also gave the husband approximately $17,000 to satisfy expenses relating to an investment property that the husband operated at that time. The parties dispute whether this was a "voluntary" or a "pressured" advance given by the wife to the husband, but there is no dispute that it was received. The wife also testified that she spent approximately $5,500 carpeting and decorating the marital residence.
The husband is 56 years old and has a high school education. He is in generally good health, except that he has dental problems that will require treatment. He is presently self-employed, operating Advance Hair and Transplant Center started by him and his wife. According to his testimony and most recent financial affidavit, the husband does not have any present or expected earnings from his business, but as discussed further below, the court places little weight on the husband's testimony about the accuracy of his earnings or his earning capacity. Prior to his present business, the husband's income was derived from his employment at a hair transplant clinic and from an investment property that he owned. He was terminated from this employment in April 1997 and the investment property was sold by him in January 1998 during the pendency of this proceeding. A pendente lite motion for contempt was filed by the wife against the husband for CT Page 2367 his sale of this property. In an order dated April 24, 1998, the court denied the motion on the ground that on balance, the circumstances failed to establish that the sale was done by the husband in wilful violation of a court order. However, there is no question that the sale was in violation of the existing order precluding the parties from transferring or dissipating assets. The court found that the proceeds of the sale were marital assets and that the court would take this fact and the husband's use of these fund into consideration as part of the court's final disposition of this case. From the gross sale proceeds, various personal obligations of the husband were paid including, $10,000 paid to an attorney for legal fees unrelated to the closing. The defendant received approximately $75,000 of the sale proceeds which he has spent and $20,000 are being held in escrow.
According to the husband's financial affidavits, his most valuable asset is real estate located in Northford, Connecticut. The husband filed two financial affidavits showing the existence of a $152,000 mortgage on this property. However, the evidence established that the mortgage was approximately $60,000, and thus, the equity value of the property is approximately $140,000. The evidence also indicated that a lien for more than $400,000 had been filed on this property, but that this lien was filed after a lis pendens was filed by the wife based on these proceedings. On his financial affidavit, the husband also identifies a time share in Florida and real estate in Maine having a total equity value of $42,000. His October 21, 1998 financial affidavit shows weekly expenses of $1,311 a week and liabilities totaling $873,200 (including a $800,000 debt owed to Toshiba America). The husband also has other personal assets as shown on his financial affidavit, including vehicles worth $23,500 and a gun collection worth $15,000.
After considering the testimony, exhibits, and financial affidavits, as well as the parties' candor and demeanor, the court does not find the husband's testimony, especially about his finances and the reasons for the breakdown of the marriage, as being credible. For example, at the trial proceedings held in April 1998, the husband testified that all the $75,000 sale proceeds received by him were spent on his personal living expenses and to satisfy the pendente lite orders. He testified that he also used $8,000 of these funds to give a loan to his business, although this loan is not reflected on his financial affidavits. The trial recessed and resumed in October 1998. Between April and October 1998, the husband testified that his CT Page 2368 only income was $2,000 received from one hair transplant. He also testified that he took approximately $5,000 from the business as partial repayment of the business loan owed to him. Despite his extensive expenses and liabilities, the husband testified that the hair transplant business was his sole source of income and he had made no efforts to acquire money or employment from any other source. Yet, in October the husband testified that at least through August 1998, he had remained current in the payment of all his personal expenses (except the court ordered pendente lite payments to his wife). According to his financial affidavit, these expenses totaled at least $1,000 a week or well over $10,000 for the period between April 1998 and September 1998. The husband could not explain how these personal expenses were paid in full during this time period when he only received $7,000. He claimed that he may have met his expenses for this time period by using some of the $75,000 obtained from the sale of his business property, but he testified in April that all these funds had already been spent.
The court heard extensive testimony about the wife's departure from the home in August 1997. The husband claims that the wife caused damage to the house when she left. The wife denies these claims. The court finds the wife's testimony more credible on this issue and the husband offered no probative evidence about the cost to repair any of the alleged damage.
Prior to her departure, the wife hid many of the husband's guns around the parties' marital home in Northford. She claims that she hid the guns because of her concerns about her safety, but the court finds more credible the evidence that she hid the guns to retaliate against the husband for money she believed that he owed her. The husband claims that five guns were never located. The husband characterized these guns as collector's items. The husband testified that the guns' value was approximately $24,500, but the evidence about their value was very unclear. The husband also claims that the wife wrongfully took other numerous items from the residence when she left, including appliances, furniture and his mother's ring. The court finds much of the husband's testimony on this issue to be exaggerated, but the court finds that all the guns were not located and that certain items, specifically the stereo system, sofa set, and appliances were improperly taken. The exact value of these items was not established, but a fair estimate based on the husband's testimony is that a value of at least between $10,000 and $15,000 is appropriate and the court will take this CT Page 2369 finding into consideration when issuing the final orders.
The parties hotly dispute the reason for the breakdown of their marriage. The wife claims that her husband was intimidating, controlling and demeaning to her. He denies these claims. They both agree that financial disputes were a significant factor in their separation, but their exact explanations of this problem are entirely different. The wife claims that when they met in Minnesota the husband indicated to her that he was wealthy, but when she came to Connecticut she found that he not only lacked substantial income, but he spent her money and hounded her for her savings. The husband says that he was entirely surprised by her departure in August 1997 and really does not know why the marriage broke down. He surmises that she viewed the marriage as a business arrangement that went sour and was worth abandoning after he lost his job and the parties' business did not excel. The court again questions the complete veracity of the husband's testimony since he also testified that before she left in August 1997, he had talked to an attorney and a friend about his marital problems. Both parties agree that a crucial factor precipitating their separation was that he had one view and she had another about how the profits of their business should be split between them. After consideration of the evidence as a whole, including the credibility of the parties, the court finds that while both parties contributed to the breakdown of the marriage, the husband's conduct was the primary cause for the irretrievable breakdown of the marriage.
The court has carefully considered the above findings, as well as the statutory criteria for the granting of a dissolution of marriage, the awarding of alimony, and attorney's fees, and the dividing of the parties' assets and liabilities. The court orders the husband to pay the wife lump sum alimony in the amount of $30,000. In issuing this order, the court has taken into consideration all of the parties' respective claims including the wife's claims for attorney fees and for the arrearage on the pendente lite alimony, and the husband's claims for missing or taken property. As this award is in the nature of support it shall be non-dischargeable in bankruptcy. $20,000 of this award shall be paid within 60 days and shall be paid from the money being held in escrow from the sale of the husband's business property. The remaining $10,000 shall be paid in full within six months. This award or any unpaid balance of the award may be secured through judgment liens on the husband's property as allowed by law. In addition to any other remedy available by CT Page 2370 law, in the event the husband fails to pay this award as ordered, the wife may execute upon property owned by the husband to satisfy this judgment as authorized by law. The parties' marriage is hereby dissolved.
So ordered.
Dated this 25th day of February, 1999.
Stevens, J.